IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

MANUEL OWEN, individually, )
Manuel Owen as Surviving Spouse )
and Personal Representative of )
the Estate of Lyn Owen, )
 )
      Plaintiffs, )
 )
v. ) Case No. CIV-12-384-FHS-KEW
 )
FARMERS INSURANCE COMPANY, INC., )
a Kansas for profit Insurance )
Corporation, )
 )
      Defendants. )

**OPINION AND ORDER**

  This matter comes before the Court on Defendant's Motion for Summary Judgment and Brief in Support (Dkt. # 53). The Plaintiffs filed a Response requesting this Court deny the motion in its entirety (Dkt. #s 63 & 83). On December 3, 2013, the Defendant filed its reply (Dkt. # 79). For the reasons detailed below, the Defendant's Motion for Summary Judgment is **DENIED**.

  Plaintiffs were insured under a homeowners policy issued by defendant Farmers Insurance Company, Inc. ("Farmers"). After their lake cabin in Broken Bow, Oklahoma was destroyed by a fire on August 11, 2012, plaintiffs sought coverage for their loss under their policy. The cabin was inspected on August 14, 2012 and on August 22, 2012, Farmers sent Plaintiffs the initial estimate for the repairs along with an actual cash value payment of $67,239.34.

On September 13, 2012, or 33 days after the fire, Plaintiffs filed this lawsuit against Farmers for breach of contract, bad faith and punitive damages. Defendant now moves for summary judgment on all of the plaintiffs claims.

Summary judgment is only appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one that is essential to disposition of a claim, and a genuine issue is present when the trier of fact could resolve it in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence and any reasonable inferences that might be drawn from it must be viewed in the light most favorable to the nonmoving party. *Simms v. Okla. ex rel. Dep't of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).

## UNDISPUTED FACTUAL BACKGROUND

The following facts are largely undisputed. On August 11, 2012, Plaintiffs' cabin was damaged by a fire. At the time of the fire, Plaintiffs had a policy of insurance issued by Farmers which covered the smallest of the limit of the policy or that actual cash value of the damaged structure unless the damaged dwelling was repaired, in which case the policy covered replacement cost. The policy provided, however, that no more than actual cash value would

be paid until any repairs or replacement was completed. On August 13, 2012, Plaintiffs submitted a claim to Farmers for fire damage to their cabin. Plaintiffs' claim was assigned to claims representative (hereinafter, "CR") Nathan Morris and he inspected the cabin on August 14, 2012, and took photographs of the fire damage and the damaged contents.

CR Morris forwarded a list of Plaintiffs' damaged or destroyed contents to CR Lindsey Harris for pricing. CR Harris determined the actual cash value of the damaged or destroyed contents was $9,190.21 (replacement cost of $11,488.36 less depreciation of $2,298.15). CR Harris contacted Mrs. Owen and explained the actual cash value payment of $9,190.21. A check for this amount was sent to Plaintiffs on August 21, 2012. Plaintiffs admit that they were paid fairly on the content portion of their claim and have no issues with what Farmers paid them for the contents of the cabin.

On August 22, 2012, CR Morris completed his initial estimate to repair and replace those portions of Plaintiffs' cabin damaged or destroyed by the fire. The initial estimate showed a replacement cost value of $123,904.16. According to this estimate, the recoverable depreciation was $52,964.16 and the non-recoverable depreciation was $2,700.74 and after applying Plaintiffs' $1,000 deductible, the actual cash value of the damaged or destroyed structure was $67,239.34.

3

On August 22, 2012, CR Morris contacted Mrs. Owen and explained his initial estimate and the building payment of $67,239.34. He also explained recoverable and non-recoverable depreciation. Thereafter, on the same day, CR Morris sent Plaintiffs his initial structure estimate and an actual cash value check in the amount of $67,239.34. CR Morris' estimate was based solely on the useful life expectancy of the structural component without considering the actual condition of the component prior to the fire.

On August 30, 2012, CR Harris received a letter from Harvey Lewis & Associates advising they had been retained by Plaintiffs to serve as their public adjuster in connection with the fire on August 11, 2012. The letter indicated that W.S. Estimate & Appraisal Service had been asked to provide them with an estimate of repair and once that was received a copy would be provided to Farmers. Further, the letter indicated Lewis & Associates would be re-working the personal loss with the insured and would provide additional information once that had been completed. Finally, the letter also requested Farmers to provide Lewis & Associates with a certified copy of the policy.

On August 31, 2012, CR Harris sent Lewis & Associates a letter acknowledging their representation of Plaintiffs. She also advised

that she had requested a certified copy of the policy and would provide it upon receipt.

On September 10, 2012, CR Harris contacted Lewis and Associates and advised she was issuing a supplemental payment for the board up of Plaintiffs' cabin and she was sending the copy of the policy as requested. Lewis & Associates advised they had no questions.

An estimate of repair from W.S. Estimate & Appraisal was never generated or sent to Farmers as Lewis & Associates indicated they were going to do in their August 30, 2012 letter to CR Harris. After receiving CR Morris' initial estimate and $67,239.34 check, Plaintiffs never called CR Morris nor advised Farmers they were dissatisfied or unhappy with the depreciation applied to the structure portion of their claim. Rather, Plaintiffs filed this lawsuit on September 13, 2012, thereby putting Farmers on notice that they were not satisfied with the way their claim was paid.

## **LEGAL ANALYSIS**

Plaintiff's Complaint (Dkt. # 2) seeks relief for (1) breach of contract; (2) bad faith; and (3) punitive damages. In its motion for summary judgment (Dkt. # 53), Defendant seeks summary judgment on all claims.

Summary judgment is appropriate where there is no dispute of material facts and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P.56.  When presented with a summary judgment motion, this Court must determine whether there "are any genuine factual issues that properly can be resolved only by the finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).  When evaluating a motion for summary judgment, this Court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988).  The party opposing summary judgment, however, "may not rest upon mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510 (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

**1. Breach of Contract Claim**

Farmer's argues the parties are bound by the terms of the insurance contract and the contract in this case provided that covered loss to Buildings would be settled by actual cash value if the insured does not repair or replace at the same location. According to the contract, Farmers was required to pay the smallest

6

of the limit of insurance applying to the damaged or destroyed dwelling or the actual cash value of the damaged or destroyed dwelling. The policy defines "Actual Cash Value" as the "replacement cost of the property at the time of loss, less depreciation." Farmers claims they paid in accordance with the policy. Since Plaintiffs do not intend to rebuild, they agree they are only entitled to Actual Cash Value as defined by the insurance policy. Plaintiffs, however, argue that any deduction for depreciation must be fair and reasonable. Plaintiffs claim an excessive and unreasonable depreciation rate was applied to numerous items including: pine paneling, ductwork, batt insulation, base molding, drywall, fiberglass insulation, aluminum windows, wood window seals, laminate counter tops, kitchen faucets, and a double bowl porcelain kitchen sink.

In Oklahoma, actual cash value is determined by the "broad evidence rule" as described in *Rochester American Ins. Co. v. Short*, 252 P.2d 490 (Okla. 1953). *Branch v. Farmers Ins. Co., Inc.*, 55 P.3d 1023, 1026 (Okla. 2002). The Court-approved Syllabus in *Rochester* explains the relationship between actual cash value and the broad evidence rule. "Syllabus 3 provides that actual cash value of a building totally destroyed by fire is a matter of fact to be determined by a consideration of all relevant factors and circumstances existing at the time of loss. Some relevant factors listed in *Rochester* include purchase price, replacement cost,

appreciation or depreciation, the age of the building, the condition in which it has been maintained and market value." *Id*.

Thus, in order to determine the appropriate amount of depreciation which should have been applied to the structural components of plaintiffs' cabin, the insurance company should have considered the condition of the structure prior to the fire in addition to the useful life expectancy of the structural components. According to the documents submitted by Plaintiffs, their cabin was free of pre-existing structural damages prior to the fire loss. Farmers did not, however, consider the pre-fire condition of the plaintiffs' cabin when determining the actual cash value. Rather, the insurance adjuster only considered the average life expectancy based upon when he believed the cabin had been built. If Farmers failed to reasonably calculate depreciation, Farmers may have violated the terms of the policy. Since Farmers was required to fairly cover the loss incurred by its insured and the evidence indicates Farmers may have failed to reasonably calculate depreciation, this Court finds summary judgment is not appropriate on the Plaintiffs' breach of contract claim. Accordingly, summary judgment is **DENIED** as to the breach of contract claim.

8

**2. Bad Faith Claim**

Farmers argues because they paid this claim within a few days of the loss, there is no basis for Plaintiffs' bad faith claim which was filed only 33 days after the fire loss.  Plaintiffs claim excessive depreciation applied by Farmers resulted in an unreasonable and unfair claim payment and was done in bad faith. In their reply, Farmers asserts Plaintiffs can not claim bad faith based on an inadequate investigation because Plaintiffs were in the best position to advise Farmers that their cabin was in better condition that what CR Morris was able to observe after the loss and yet, they never communicated their concerns to CR Morris or Farmers prior to filing this lawsuit.

Under Oklahoma law, "an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought.  *Christian v. American Home Assur. Co.*, 577 P.2d 899, 904 (Okla. 1977).  Since conflicting evidence as to the reasonableness of the insurer's conduct exists, this Court finds summary judgment should be **DENIED** as to the bad faith claim.

**3.  Punitive Damages Claim**

Farmers argues, even if Plaintiffs' bad faith claim survives, this Court should grant judgment in their favor on the punitive damages claim because there is no evidence they acted with "reckless disregard" in its handling of Plaintiffs' claim. Plaintiff argues Farmers "intentionally and unreasonably applied excessive depreciation to the structural components of their property and that "this gross over depreciation of structural items was without justification or excuse as these items were entirely functional and in good condition prior to the loss." Dkt. #s 63 & 83, at p. 21.  In their reply, citing *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1105 (Okla. 2005), Farmers contends Plaintiffs have failed to produce competent evidence upon which a reasonable jury could find reckless disregard, from which malice and evil intent may be inferred.  To the extent that Farmer's branch manager repeatedly testified that Plaintiffs were paid unreasonably and unfairly for several of the structural components of their cabin and those payments were not consistent with good faith claims handling, this Court finds a question of fact exists for the jury. Therefore, summary judgment is **DENIED** as to punitive damages.

**CONCLUSION**

For the reasons stated herein, Farmers' Motion for Summary Judgment is **DENIED**.

It is so ordered this 6th day of January, 2014.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma